**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATHERINE STRICKLAND,** | : | **CIVIL ACTION NO. 3:12-CV-1597** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE, Commissioner** | : | |
| **of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

Presently before the court in the above-captioned matter are the complaint (Doc. 1) of plaintiff Katherine Strickland ("Strickland") seeking review of a decision of the Commissioner of Social Security[1] ("Commissioner") denying Strickland's claim for social security and disability benefits, the Commissioner's answer (Doc. 6) thereto, and the transcript (Doc. 7) of administrative proceedings.  The issues are fully briefed, (Docs. 11-12), and the matter is ripe for review.  For the reasons that follow, the court will vacate the Commissioner's decision and remand the above-captioned matter for further proceedings, as necessary, and issuance of a new decision.

---

[1] Michael J. Astrue's term as Commissioner of Social Security expired on January 19, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin, who succeeded Astrue and was appointed Acting Commissioner of Social Security on February 14, 2013, is substituted as defendant in this action. See FED. R. CIV. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party.").

## I.    Factual and Procedural History

Katherine Strickland ("Strickland") was born on January 12, 1963, and was forty-five (45) years old at the time of alleged disability onset.[2]  (Tr. at 157[3]).  The record reveals that Strickland received her high school diploma and has relevant past work experience as a call center customer service representative, which is considered light, semi-skilled work.  (Id. at 63, 157).  She currently resides with her fiancé and daughter.  (Id. at 41-42).

---

[2] At all times relevant to this matter, Strickland was a "younger individual" under the Social Security regulations, meaning that her age would not seriously impact her ability to adjust to other work.  (Tr. at 20); see 20 C.F.R. §§ 404.1563(c); 416.963(c); see also 20 C.F.R., pt. 404, subpt. P, app. 2 § 201(h)(1) ("The term younger individual is used to denote an individual 18 through 49.").

[3] References to "Tr. at __" are to the transcript of administrative proceedings (Doc. 5) filed by the Commissioner on June 25, 2012.

Strickland protectively filed[4] for disability insurance benefits[5] ("DIB") on November 14, 2008, and for supplemental security income[6] ("SSI") on November 30, 2008. (Id. at 119-28). Strickland alleges that various impairments, individually and in combination, render her totally disabled and unable to engage in any gainful employment. (Id. at 38-39). Specifically, she asserts that the following impairments substantially limit her functional abilities: fibromyalgia, degenerative joint disease in the knees, depression, migraine headaches, diabetes, reflux disease, irritable bowel syndrome, and chronic pain. (Id. at 18-19). The administration denied Strickland's initial application for benefits on August 4, 2009. (Id. at 97-105). The administrative law judge ("ALJ") thereafter held a hearing and heard testimony from Strickland and a vocational expert. (Id. at 31-66).

---

[4] Protective filing occurs the first time an individual contacts the Social Security administration to file a claim for benefits. Protective filing provides an applicant the benefit of an earlier application date than the date appearing on the formal, signed application.

[5] Disability insurance benefits are paid to individuals who are both disabled and "insured," meaning the individual has worked long enough and paid social security taxes. 42 U.S.C. §§ 415(a), 416(i)(1). The last date that an individual meets the insured requirement is commonly referred to as the "date last insured." Id. § 416(i)(2). The ALJ found that Strickland met the insured requirements through December 31, 2013, (Tr. at 18), and thus Strickland must show that she suffered from a disability on or before that date. See 20 C.F.R. § 404.131.

[6] Supplemental security income is a federal income supplement program funded by general tax revenues rather than social security taxes. See 42 U.S.C. § 1381. The program is designed to help the aged and blind or disabled individuals who have limited or no income. See id. § 1381a. Insured status is irrelevant to an individual's eligibility for supplemental security income benefits. See id. § 1382.

During the hearing, Strickland testified at length with respect to subjective complaints.  Regarding physical symptoms, Strickland reported waking up "every morning . . . feeling like I've been run over by a truck during the night." (Id. at 48).  Strickland ranked her daily pain level "at a four or five depending on the area of my body" on a scale from zero to ten. (Id. at 58).  Strickland stated that she feels nearly constant pain in the joints of her shoulders, elbows, hips, knees, ankles, and wrists. (Id. at 49).  She testified that she misses school "anywhere from five to six, six to eight times a month" because her fibromyalgic pain prevents her from leaving her home. (Id. at 55).  She also testified that she experiences migraine headaches, "at least four a month," which are controlled by medication if caught in time, (id. at 53, 55), and that she was once hospitalized for a migraine which persisted for four (4) days. (Id. at 54).  She stated that she suffers from frequent diarrhea as a result of irritable bowel syndrome. (Id.)  According to Strickland, she experiences flare ups of diarrhea two or three days per week, each resulting in trips to the bathroom "anywhere from eight to 12 times a day in a work day." (Id. at 57).

With respect to her mental symptoms, Strickland stated that she has been treating with a priest, who is also a licensed psychologist, as therapy for situational depression, which she surmises is a result of her mother passing away, her son's deployment to Iraq, her ex-husband going to jail for abusing her daughter, and "not being able to do what I used to do." (Id. at 50-51).  Strickland also explained that although she is generally good at retaining information, she sometimes struggles to recall information she has learned.  (Id. at 48).

4

With respect to daily activities and abilities, Strickland testified that she can only lift a half gallon of milk and can handle walking for a short grocery store trip. (Id. at 52). Strickland testified that she can stand for approximately fifteen minutes and can sit for half an hour before she needs to move. (Id. at 53). At the time of the hearing, Strickland reported that she was in school full time at the Fortis School, four days per week, studying to become a medical assistant technician. (Tr. at 44-45). She testified that she is "doing very well" in school; however, she explained that the school is not very accommodating about poor attendance, and she was "in danger of being thrown out" for missing too much time. (Id.). She explained that while at school, she must stand up and walk around up to four times each morning and afternoon. (Id.) Strickland testified that her daughter handles all household chores. (Id.) Strickland reported that she recently attended a gathering of her former classmates in Philadelphia and that she took a trip to the Poconos with her fiancé where they went to dinner, walked the complex, and then "stayed pretty much in" because of a snow storm. (Tr. at 43-44).

After the hearing, the ALJ issued a decision finding that Strickland is not disabled. (Id. at 13-26). Specifically, the ALJ concluded that Strickland has the

residual functional capacity ("RFC") to perform sedentary work[7] with enumerated

limitations. (Id. at 20-21). The vocational expert testified that various unskilled jobs

exist in the national and local economy within these limitations. (Id. at 64-69). On

June 20, 2012, the Social Security Appeals Council denied Strickland's request for

review of the ALJ's decision. (Id. at 1-5). On August 14, 2012, having exhausted her

administrative remedies, Strickland commenced this civil action to challenge the

decision of the ALJ pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).[8]

---

[7] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). Although sedentary jobs involve sitting, "a certain amount of walking and standing is often necessary in carrying out job duties," and a job is sedentary "if walking and standing are required occasionally and other sedentary criteria are met." Id. §§ 404.1567(a), 416.967(a).

[8] "The final determination of the [Commissioner] after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . . Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business." Id. § 405(g). Under the Local Rules for the United States District Court for the Middle District of Pennsylvania, "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" shall be "adjudicated as an appeal." LOCAL RULE OF COURT 83.40.1.

## II.    <u>Standard of Review</u>

District courts have jurisdiction to review decisions of the Commissioner denying disability insurance benefits or supplemental social security income based upon 42 U.S.C. § 405(g).  <u>See id.</u> ("Any individual . . . may obtain review of [any final decision of the Commissioner] by a civil action commenced within sixty days after the mailing to him of such decision."). When considering such an appeal, district courts have plenary review of all legal issues decided by the Commissioner. <u>Poulos v. Comm'r of Soc. Sec.</u>, 474 F.3d 88, 91 (3d Cir. 2007); <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 428, 431 (3d Cir. 1999); <u>Krysztoforski v. Chater</u>, 55 F.3d 857, 858 (3d Cir. 1995).  Judicial review of the Commissioner's findings of fact is much more limited: the test is deferential and tasks the court to determine whether the factual findings are supported by "substantial evidence." 42 U.S.C. § 405(g) ("The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive."); <u>see</u> <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001) ("Where  . . . findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); <u>see</u> <u>also</u> <u>Mason v. Shalala</u>, 994 F.2d 1058, 1064 (3d Cir. 1993); <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229 (1938)); <u>Johnson v.</u>

7

Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla," but less than a preponderance, of the evidence. Brown, 845 F.2d at 1213 (citing Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988)). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter v. Harris, 642 F.2d 700, 706 (3d Cir. 1981), and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). "When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Mason, 994 F.2d at 1066). The ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706–07. Therefore, the district court must scrutinize the record as a whole on appeal. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

III.   **Sequential Evaluation Process**

To receive disability benefits, social security claimants must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered to be "unable to engage in substantial gainful activity" when "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The ALJ employs a five-step process in evaluating DIB and SSI claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to query, in sequence, whether the claimant: (1) is engaging in "substantial gainful activity"[9]; (2) has an impairment that is "severe"[10] or a combination of impairments that is

---

[9] If the claimant is engaging in substantial gainful activity, the claimant is not disabled under the Act and the Commissioner proceeds no further. Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 416.972.

[10] An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. Id. §§ 404.1545(b); 416.945(b). Basic mental or non-exertional abilities include the abilities to understand, carry out, and remember simple instructions, and to respond appropriately to supervision, coworkers, and work pressures. Id. §§ 404.1545(c); 416.945(c). If the claimant does not have an

severe; (3) has an impairment or combination of impairments that meets or equals the criteria of a "listed impairment" or "listing"[11]; (4) has the "residual functional capacity" ("RFC") to return to his or her past work[4]; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests with the claimant throughout the first four steps and with the Commissioner at step five. Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987).

At step four, the Commissioner determines the claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An RFC represents the claimant's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34474, 34475 (July 2, 1996). The RFC assessment must include a discussion of

---

impairment or combination of impairments which is severe, the claimant is not disabled, and the sequential evaluation process ends Id. §§ 404.1509, 404.1520(c), 416.920(c). Importantly, once a claimant establishes an impairment or combination of impairments which is severe, the ALJ must consider all medically determinable impairments in the subsequent steps of the sequential evaluation process, whether severe or not. Id. §§ 404.1523, 416.923.

[11] A listed impairment is one that appears in the Commissioner's Listing of Impairments, which is "a list of impairments presumed severe enough to preclude any gainful work." Sullivan v. Zebley, 493 U.S. 521, 525 (1990); see 20 C.F.R. pt. 404, subpt. P, app. 1 (listing of impairments). If the claimant has an impairment, or any combination of impairments, that meets or equals a listed impairment, the plaintiff is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Otherwise, the sequential process proceeds. Id. §§ 404.1520(e), 416.920(e).

[4] If the claimant has the RFC to do his or her past relevant work, the claimant is not disabled and the sequential evaluation ends. Id. §§ 404.1520(f), 416.920(f).

the individual's abilities.  Id.; 20 C.F.R. §§ 404.1545, 416.945; Fargnoli, 247 F.3d at 40

(defining RFC as that which an individual is still able to do despite the limitations

caused by his or her impairment(s)).  If the claimant does not have the RFC to

perform his or her past relevant work, or the claimant has no past relevant work,

the burden at step five shifts to the Commissioner to prove that the claimant can

perform other work in the national economy.  See Kangas, 823 F.2d at 777 (citing

20 C.F.R. §§ 404.1520(f), 416.920(f)).

As noted above, the ALJ in the matter *sub judice* conducted an evidentiary

hearing and took testimony from the claimant and a vocational expert.  The ALJ

applied the sequential evaluation process and concluded that Strickland is not

disabled under the Act and thus not entitled to disability benefits.  In step one, the

ALJ found that Strickland has not engaged in substantial gainful activity since

March 25, 2008, the alleged onset date of her disability.  (Tr. at 18).  In the second

step, the ALJ found that Strickland suffers from the following severe impairments:

fibromyalgia, degenerative joint disease of the knees, and depression.[5]  (Id.)

Next, in step three, the ALJ held that Strickland's impairments do not

separately or in combination meet or equal a listed impairment.  (Id. at 19-20).

The ALJ first considered whether Strickland satisfies the criteria of listing 1.02(A),

---

[5] The ALJ observed that Strickland also alleges disability due to migraine
headaches, gastroesophageal reflux disease, diabetes mellitus, diarrhea, chronic
lumbar spine pain, tobacco abuse, and iron deficiency anemia, but concluded that
those impairments do not cause more than minimal limitations to Strickland's
functional abilities and are thus non-severe. (Id. at 18-19).

pertaining to major dysfunction of a joint, but concluded that no objective medical evidence demonstrates that Strickland's chronic joint pain results in an inability to ambulate effectively.  (Id. at 19).  The ALJ also considered whether Strickland's mental impairment satisfies the criteria of listing 12.04, pertaining to affective disorders.  (Id. at 20).  The ALJ observed that Strickland does not satisfy the criteria of Paragraph B, which requires objective medical evidence of at least two of the following: marked[6] restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation, each of extended duration.  (Id.)  The ALJ also concluded that Strickland does not satisfy the criteria of Paragraph C, which requires medical evidence that the claimant has experienced repeated episodes of decompensation, each of extended duration, suffers from a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate, or has a current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  (Id.)

    In concluding that Strickland does not meet the criteria of these listings, the ALJ made the following pertinent observations: First, that Strickland experiences

---

        [6] A marked restriction or difficulty is defined as one that is more than moderate but less than extreme and that interferes seriously with the ability to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C).

only mild restriction in her daily living activities, noting that she lives with her fiancé and adult daughter, is able to maintain her home with their assistance, and experiences no difficulty with personal care. (Id.)  Second, that Strickland has no difficulties in social functioning. (Id.)  Third, that Strickland experiences moderate difficulties with regard to concentration, persistence, and pace, observing that she "has depression, which by its nature interferes with an individual's ability to concentrate, persist, and maintain pace." (Id.)  The ALJ observed that Strickland has not experienced any episodes of decompensation.[7] (Id.)  For these reasons, the ALJ concluded that Strickland's severe impairments neither collectively nor individually meet or equal a listed impairment. (Id.)

The ALJ assessed Strickland's RFC at step four and opined that Strickland has an RFC to perform sedentary work, with the following limitations: (1) no more than occasional postural maneuvers to include balancing, stooping, kneeling, crouching, crawling, and climbing on ramps or stairs; (2) no climbing on ladders, ropes, and scaffolding;  (3) no more than occasional pushing and pulling with the lower extremities to include the operation of foot pedals; (4) no exposure to fumes, odors, dust, gases, chemical irritants, environments with poor ventilation, extreme temperatures, and extreme dampness and humidity; (5) no more than simple, routine tasks, not performed in a fast-paced production environment, involving only

---

[7] Repeated episodes of decompensation each for an extended duration means three (3) episodes within one (1) year, or an average of once every four months, each lasting for a period of two weeks or more.  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(4).

simple, work-related decisions, and in general, relatively few work place changes;

(6) no exposure to hazards such as dangerous machinery or unprotected heights;

and (7) no more than occasional fingering, gross handling, feeling, overhead

reaching, pushing, or pulling with the upper extremities, to include the operation

of hand levers, overhead work, and prolonged writing and keyboard work. (Id. at

20-24).  The ALJ concluded that given this RFC, Strickland is unable to perform

her past relevant work as a customer service representative or waitress.  (Id. at 24).

Based on Strickland's age, work experience, education, and RFC, in addition

to the testimony of a vocational expert, the ALJ found that she is able to perform

sedentary work and identified the following representative occupations: video

monitor, telephone information clerk, and order clerk.  (Id. at 24).  The vocational

expert opined, and the ALJ found, that these jobs exist in significant numbers in

the local and national economies.  (Id.)  As a result, the ALJ held that Strickland is

not disabled as defined by the Social Security Act, 42 U.S.C. § 401 *et seq.*

## IV.   Discussion

In the instant appeal, Strickland alleges that the ALJ had no reasonable

basis to reject her testimony as to the frequency and intensity of pain associated

with her fibromyalgia, the frequency with which she experiences diarrhea, and the

frequency and intensity of her migraine headaches.  In essence, Strickland attacks

the ALJ's credibility findings with respect to her subjective testimony, asserting

that her complaints of pain are supported by objective record evidence which was

altogether ignored by the ALJ.  After reviewing the administrative record and the

14

ALJ's decision, the court concludes that the ALJ failed to adequately explain his rejection of certain probative medical records and Strickland's subjective testimony and will accordingly remand the matter to the ALJ.

When a disability determination turns on an assessment of the level of a claimant's pain, the Social Security Regulations provide a framework under which a claimant's subjective complaints are to be measured.  See 20 C.F.R. §§ 404.1529, 416.929.  Such cases require the ALJ to "evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work."  Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  Cases involving an assessment of subjective reports of pain "obviously require[] the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it."  Id. (citing 20 C.F.R. § 404.1529(c)).

Under the regulations, symptoms such as pain, shortness of breath, and fatigue will only be considered to limit a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings.  20 C.F.R. §§ 404.1529(a), 416.929(a).  Once a medically determinable impairment which results in such symptoms is found to exist, the ALJ evaluates the intensity and persistence of the symptoms to determine their impact on the claimant's ability to work.  20 C.F.R. §§ 404.1529(c), 416.929(c).  In doing so, the ALJ considers the medical evidence of record in addition to the claimant's testimony.  See 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3).  Social Security Ruling ("SSR") 96-7p provides

15

instructions for evaluating the credibility of a claimant's statements regarding

subjective symptoms:

> In general, the extent to which an individual's statements
> about symptoms can be relied upon as probative evidence
> in determining whether the individual is disabled
> depends on the credibility of the statements.  In basic
> terms, the credibility of an individual's statements about
> pain or other symptoms and their functional effects is the
> degree to which the statements can be believed and
> accepted as true.  When evaluating the credibility of an
> individual's statements, the adjudicator must consider the
> entire case record and give the specific reasons for the
> weight given to the individual's statements.

SSR 96-7p (July 2, 1996).  In addition, SSR 96-4p provides that:

> Once the existence of medically determinable physical or
> mental impairment(s) that could reasonably be expected
> to produce the pain or other symptoms alleged has been
> established on the basis of medical signs and laboratory
> findings, allegations about the intensity and persistence of
> the symptoms must be considered with the objective
> medical abnormalities, and all other evidence in the case
> record, in evaluating the functionally limiting effects of
> the impairment(s).

SSR 96-4p (July 2, 1996).  The ALJ employed this two-step analysis in his decision

and concluded that although Strickland's medically determinable impairments

could reasonably be expected to cause the symptoms she alleges, her statements

with respect to the intensity, persistence, and limiting effects of those symptoms

are not credible to the extent they are inconsistent with or not supported by the

medical evidence.  (Tr. at 23).

Several inconsistencies in the ALJ's credibility determinations compel the court to remand the matter to the Commissioner. For example, although the ALJ concludes that Strickland's subjective complaints with regard to the frequency and severity of her diarrhea are unsupported by medical evidence, the ALJ nonetheless observes that "medical evidence of record recently noted bowel movements six to seven times per day." (Id. at 19). The ALJ also relies on a note from June of 2009 in concluding that Strickland's symptoms have improved, but ignores a July 2009 note that Strickland was recently treated in the emergency room "for nausea, vomiting, and diarrhea." (Id. at 22). Further, although she acknowledges copious medical records which document Strickland's subjective complaints of fibromyalgic pain, (id. at 21-22, *passim* (observing, *inter alia*, limited range of motion due to pain and examinations revealing tenderness)), and her testimony with respect to the disabling degree of her pain, (id. at 23), the decision provides no meaningful discussion of Strickland's complaints or the corroborating medical records. (Id. at 23-24 (discussing migraine headaches, irritable bowel syndrome, osteoarthritis, and depression, but ignoring Strickland's extensive and continuing complaints of fibromyalgic pain).

Although the ALJ need not address every medical note of record, he or she must offer an explanation when rejecting relevant and probative evidence, especially when that evidence supports the claimant's subjective complaints with respect to the severity, persistency, and frequency of her symptoms. See Fargnoli, 247 F.3d at 42 ("[W] e do not expect the ALJ to make reference to every relevant

treatment note . . . ."); Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").  It is true, as the Commissioner alleges, that the ALJ may choose what evidence to credit in the face of conflicting probative evidence, see Plummer, 186 F.3d at 429, but he or she nonetheless must fully explain the reasons for doing so.  Fargnoli, 247 F.3d at 42.  Absent such an explanation, the reviewing court cannot adequately determine whether the ALJ's rejection of certain evidence was proper.  Cotter, 642 F.2d at 706-07 ("Because it is apparent that an [ALJ] cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").

Here, the ALJ devotes a single paragraph to measuring Strickland's complaints against the medical evidence and cursorily concludes that the record does not support her consistent and enduring subjective complaints.  (Id. at 23-24). In doing so, the ALJ references but ultimately ignores medical evidence which, to a certain degree, supports Strickland's subjective complaints.  *(Compare* id. at 22 (noting claimant's hospitalization in July of 2009 for diarrhea) *with* id. at 24 (holding that no medical records support Strickland's frequency, persistence, and severity complaints)).  In determining Strickland's RFC, the ALJ simply concludes that Strickland's episodic diarrhea has resolved, (see id. at 24), and ignores the copious medical records and testimony supporting Strickland's complaints of persistent fibromyalgic pain.  (See id. at 23-24).

Ultimately, the ALJ's failure to adequately explain her rejection of probative evidence undermines the court's confidence in the ALJ's credibility determinations and restricts the court's ability to engage in meaningful appellate review. Cotter, 642 F.2d at 706-07 ("An explanation . . . of the reason why probative evidence has been rejected is *required* so that a reviewing court can determine whether the reasons for rejection were improper." (emphasis added)). Although the ALJ may have perfectly acceptable reasons for rejecting Strickland's subjective complaints of fibromyalgic pain and medical evidence with respect to her chronic diarrhea, the court cannot discern those reasons from the ALJ's decision as it currently stands. For this reason, the court must remand the case to the ALJ for a clear and detailed explanation of her reason for rejecting probative medical evidence and testimony. See Fargnoli, 247 F.3d at 42 (courts should "vacate or remand a case where such an explanation is not provided").

**V.**    **Conclusion**

For the reasons stated herein, the court will vacate the decision of the Commissioner and remand for further proceedings, as necessary, and issuance of a new decision consistent with this memorandum. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:      March 12, 2014